# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DEVIN CORDELL SEATS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-cv-1381-SLD |
| | ) |
| FRANCIS SORENSON, et al., | ) |
| | ) |
| Defendants. | ) |

## SUMMARY JUDGMENT ORDER

Plaintiff, Devin Cordell Seats, proceeding pro se and presently incarcerated at Menard Correctional Center, filed suit under 42 U.S.C. § 1983, alleging that prison officials violated his constitutional rights while he was an inmate at Pontiac Correctional Center ("Pontiac").

On November 21, 2016, the Court entered a merit review order [7], finding that Plaintiff stated the following Eighth Amendment claims: (1) excessive force against Defendants Francis Sorenson, Gregory Tangman, Jordan Pratt, Derek Smith, Downie Drysdale, Michael Carlock, and Joseph Miller; and (2) deliberate indifference to a serious medical need against Defendants just named, as well as against Defendants Steven Tutoky, Randall Meister, and Travis Devries.[1]

Now before the Court for consideration is a motion for summary judgment filed by Defendants Tutoky, Meister, and Devries [59] and a motion for summary judgment filed by Defendant Miller [61]. Plaintiff filed a combined response [66] to Defendants' motions. Based on the parties' pleadings, depositions, affidavits, and other supporting documents filed with the Court, Defendants Tutoky, Meister, and Devries's motion for summary judgment is GRANTED, and Defendant Miller's motion for summary judgment is GRANTED in part and DENIED in part.

---

[1] Defendants' names are spelled as corrected by this Court's March 3, 2017, scheduling order.

## I. PRELIMINARY MATTER

On January 18, 2018, Plaintiff filed a motion to request counsel [65], arguing that he is seriously mentally ill and not competent to respond to Defendants' motions for summary judgment due to a lack of knowledge and education. Plaintiff indicated in his motion that he has been asking other inmates for guidance on how to respond to Defendants' motions. On January 25, 2018, Plaintiff filed a nineteen-page combined response [66] to Defendants' motions. In his response, Plaintiff marshalled relevant facts, cited to his deposition testimony, and made coherent arguments why the Court should deny summary judgment to Defendants.

Plaintiff has no constitutional or statutory right to counsel in this case. In considering Plaintiff's motion, the court asks: (1) has the indigent Plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007). The Court previously found that Plaintiff made a reasonable attempt to obtain counsel on his own, but his current motion does not disclose if he has continued his efforts.

As to the second prong, Defendants moved for summary judgment on Plaintiff's claims that Defendants used excessive force on him and then failed to get him medical treatment for the injuries he sustained. These claims are not overly complex, and Plaintiff has personal knowledge of the facts. Plaintiff also appears to have received help from other inmates in responding to Defendants' motions.

Although Plaintiff alleges that he has been diagnosed as seriously mentally ill, he does not describe how the condition affects his ability to function. In fact, up to this point, the condition does not appear to be affecting Plaintiff's ability to litigate this case. In his response to

Defendants' motions, Plaintiff marshalled relevant facts, cited to his deposition testimony, and made coherent arguments why the Court should deny summary judgment to Defendants. Thus, the Court finds that Plaintiff competently responded to Defendants' motions for summary judgment on his own. Therefore, the Court denies Plaintiff's motion to request counsel but grants Plaintiff leave to renew his motion at a later date.

## II. MATERIAL FACTS

Consistent with summary judgment standards, the following facts are recounted in the light most favorable to Plaintiff. *See Davis v. Carter*, 452 F.3d 686, 688 (7th Cir. 2006).

Plaintiff entered the custody of the Illinois Department of Corrections in 2011 and transferred to Pontiac in November 2014. (Pl.'s Dep. 10:8–15, ECF No. 60-1.) During the relevant time period, Plaintiff was housed in the north cell house at Pontiac, and Defendants were employed at Pontiac; Defendant Sorenson as a lieutenant, Defendants Tangman and Meister as sergeants, and Defendants Pratt, Smith, Drysdale, Carlock, Miller, Tutoky, and Devries as correctional officers. (*Id.* at 10:21–13:14, 100:14–16.)

In the afternoon on June 26, 2016, Plaintiff swallowed twenty-five psychotropic pills in an attempt to commit suicide. (*Id.* at 13:23–14:3.) Later that night, Plaintiff was lying unconscious on the floor of his cell next to the door. (*Id.* at 20:13–17, 98:8–9.) At approximately 9:35 p.m., Plaintiff heard loud banging on his cell door. (*Id.* at 17:13–19.) Several seconds later, Defendant Pratt opened the door and kicked Plaintiff in the face. (*Id.* at 19:15–23.) Plaintiff describes the pain he felt as an eight on a ten-point scale. (*Id.* at 64:13–21.) Plaintiff speculates that Pratt kicked him (and the other Defendants did later) in retaliation for Plaintiff allegedly spitting on Pratt earlier. (*Id.* at 82:1–6.) Plaintiff states he did not spit on Pratt but only cleared his throat, which sounded like he was going to spit. (*Id.* at 100:23–101:6.)

Defendant Smith then came into the cell, punched and kicked Plaintiff in the face, ribs, and back, and pulled out two of Plaintiff's dreadlocks. (*Id.* at 21:8–22:23.) Next, Defendant Carlock came into the cell and started punching and kicking Plaintiff in the back. (*Id.* at 23:4–17.) At some point, Defendant Drysdale came into the cell and punched Plaintiff in the head and back. (*Id.* at 85:14–22.) Plaintiff estimates that, in total, Defendants kicked him fifteen times and punched him twenty-five times. (*Id.* at 102:20–23.) Plaintiff states that the pain he felt from Defendants punching him was a nine on a ten-point scale. (*Id.* at 69:11–13.)

Defendants then pulled Plaintiff up onto his knees and placed shackles on his hands and feet extremely tightly. (*Id.* at 29:9–22.) Defendant Tangman then stood on the shackles on Plaintiff's ankles, cutting off blood circulation and causing Plaintiff pain. (*Id.* at 31:25–32:3.) Defendants later removed the shackles from Plaintiff, exited the cell, and left Plaintiff inside his cell. (*Id.* at 33:1–20.)

Plaintiff states that Defendant Sorenson came into the cell for a "brief second" right before the shackles were removed from Plaintiff. (*Id.* at 92:24–93:19.) Sorenson did not touch Plaintiff but only walked into the cell, looked at Plaintiff, and then walked out. (*Id.*) Plaintiff states that he saw Defendant Miller "after everything was over with." (*Id.* at 93:20–94:7.) As far as Plaintiff remembers, Miller was never inside the cell. (*Id.*) When asked during his deposition whether Miller ever touched him, Plaintiff responded, "Not that I know of." (*Id.*)

Defendant Miller states that security staff entered Plaintiff's cell on June 26, 2016, around 9:30 p.m. to conduct a wellness check because Plaintiff was unresponsive. (Miller Aff. ¶ 6, ECF No. 62-1.) Miller states that he observed Plaintiff being combative during the wellness check but did not observe Plaintiff being punched or kicked by the security staff. (*Id.* ¶¶ 10–11.)

Plaintiff states that he asked for medical attention at least four times during the encounter. (Pl.'s Dep. 94:8–24.) One of the Defendants told Plaintiff he would not receive any medical attention. (*Id.* at 35:1–6.) Plaintiff states that he suffered multiple injuries from the encounter. (*Id.* at 39:5–43:5.) He had a swollen face, jaw, and eyes, he had knots and a big gash on his forehead, his head was hurting from the pulled-out dreadlocks, and he had deep gashes on his wrists and ankles from the shackles. (*Id.*) Plaintiff was bleeding from his wrists and ankles, as well as from his mouth where he had bit his tongue. (*Id.*)

Defendant Miller states that he did not observe Plaintiff exhibiting any physical injuries and does not recall Plaintiff asking for medical attention. (Miller Aff. ¶¶ 12–13.)

After the 11:00 p.m. shift change on June 26, 2016, Plaintiff tied a sheet around his neck, then tied it to the chuckhole, and sat on the floor. (Pl.'s Dep. 46:13–47:7.) Two correctional officers saw Plaintiff with a "noose" around his neck, so they transported him to the holding tank. (*Id.* at 48:9–25.) A nurse visited Plaintiff in the holding tank and examined him by taking his vitals and looking at his face, wrists, and ankles. (*Id.* at 49:7–50:12.) Plaintiff told the nurse that he had swallowed pills. (*Id.* at 51:3–14.) The nurse then consulted a doctor, who placed Plaintiff on suicide watch. (*Id.*)

The next day, on June 27, 2016, Plaintiff had a gash on his forehead, a swollen jaw, and swollen eyes that were black and purple. (*Id.* at 57:12–23.) At approximately 9:30 a.m., Defendant Meister stopped by Plaintiff's cell because he had heard what happened to Plaintiff. (*Id.* at 54:19–23.) Plaintiff states that he showed Meister his face and told Meister he needed medical attention. (*Id.*) According to Plaintiff, Meister told Plaintiff that he was "going to call [and] see what they say." (*Id.*) Meister states that he does not recall this encounter with Plaintiff on June 27, 2016. (Meister Aff. ¶ 9, ECF No. 60-1.)

At approximately 10:00 a.m., Plaintiff saw Defendant Devries. (Pl.'s Dep. 56:1–14.) Plaintiff explained to Devries what had happened and showed Devries his face, head, and feet. (*Id.*) Plaintiff told Devries he needed medical attention, and Devries responded that "he'll see what he could do." (*Id.*) Counsel for Devries informs the Court that she was unable to obtain an affidavit from Devries because he is currently on emergency military leave and stationed overseas. (Devries Mem. Law 1 n.1, ECF No. 60.)

Between 10:00 a.m. and 11:00 a.m., Plaintiff saw Defendant Tutoky. (Pl.'s Dep. 56:15–57:11.) Plaintiff told Tutoky that he had "been jumped on" and that he needed medical attention. (*Id.*) According to Plaintiff, Tutoky said that "he'll see what he could do." (*Id.*) Tutoky states that he does not recall this encounter. (Tutoky Aff. ¶ 8, ECF No. 60-1.) Tutoky states that the roster for June 27, 2016, shows that he was not assigned to Plaintiff's unit on this date but was instead assigned to a unit that was approximately two hundred yards away from Plaintiff's unit. (*Id.* ¶¶ 9–13.) According to Tutoky, he would not have entered Plaintiff's unit on this date because he was not assigned to the unit. (*Id.* ¶¶ 14–15.) "Therefore," Tutoky states, "Plaintiff could not have told me he was in need of medical attention." (*Id.* ¶ 15.)

At approximately 11:00 a.m., Nurse Chrissey, who was dispensing medications to inmates, stopped by Plaintiff's cell. (Pl.'s Dep. 58:1–11.) Plaintiff told Nurse Chrissey that he needed medical attention and that he kept passing out.[2] (*Id.* at 59:1–4.) Plaintiff states that he passed out three times on June 27, 2016. (*Id.* at 59:24–60:3.) Nurse Chrissey looked at Plaintiff's face and told him that she was going to try to get him over to the health care unit. (*Id.*)

At approximately 2:00 p.m., correctional officers found Plaintiff passed out in his cell. (*Id.* at 60:14–18.) They transported Plaintiff to the holding tank, where Plaintiff saw Nurse

---

[2] Plaintiff did not state during his deposition (or in an affidavit) that he told Defendant Meister, Devries, or Tutoky that he kept passing out.

Chrissey again. (*Id.* at 61:7–18.) Nurse Chrissey told Plaintiff that she had called for him to be transported to the health care unit and that she does not know why no one sent him there. (*Id.*)

Plaintiff was then transported to the health care unit where a different nurse examined Plaintiff. (*Id.* at 63:5–20.) According to the medical records, Plaintiff complained of pain around his posterior skull, orbital bones, and jaw. (IDOC Med. Rs. 55, ECF No. 60-1.) The nurse noted that Plaintiff exhibited bruising and swelling around his eyes. (*Id.*) Plaintiff states that the nurse gave him Tylenol but that it did not help with the pain. (Pl.'s Dep. 106:11–15.) The nurse also ordered x-rays, which were taken the next day. (*Id.* at 63:13–20.) Plaintiff states, "They said that I had facial trauma, but I needed an MRI to see if something was really messed up." (*Id.* at 63:21–64:9.) Plaintiff, however, did not receive an MRI and did not receive any further treatment for his injuries. (*Id.*)

### III. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant may demonstrate the absence of a genuine dispute through specific cites to admissible evidence or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(1). If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.*; *Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011). "In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forth with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. *Id.* at 248.

### IV. ANALYSIS

Defendant Miller argues that he is entitled to summary judgment on Plaintiff's excessive force claim because Plaintiff cannot show that Miller used any force on Plaintiff. Defendants Miller, Tutoky, Meister, and Devries argue that they are entitled to summary judgment on Plaintiff's deliberate indifference claim because Plaintiff cannot show that his medical needs were objectively serious or that Defendants acted with a sufficiently culpable state of mind. Defendant Tutoky further argues that he is entitled to summary judgment because he had no personal involvement in the alleged constitutional violations.

**A.     Excessive Force Claim**

Under the Eighth Amendment, prison officials may not use excessive physical force against prisoners. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). In an excessive force claim, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.*

Defendant Miller argues that since Plaintiff concedes Miller never touched Plaintiff during the alleged encounter, he is entitled to summary judgment on Plaintiff's excessive force claim. Plaintiff, on the other hand, argues he never conceded that Miller did not touch him but only that he does not know whether Miller ever touched him. Plaintiff argues that this does not mean Miller never touched him or used excessive force against him but only that Plaintiff did not observe Miller doing so.

To survive summary judgment, a plaintiff is required to present some evidence that a defendant "caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). "Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). In the present case, Plaintiff presents no evidence that Defendant Miller participated in the use of excessive force or that Miller even touched him. Plaintiff states that he saw Miller after everything was over with and that he has no recollection of Miller ever entering his cell during the encounter. Consequently, any inference that Miller participated in the alleged use of excessive force is based solely on speculation. Therefore, the Court finds that no reasonable juror could conclude that Defendant Miller caused or participated in the alleged use of excessive force on Plaintiff.

Plaintiff, however, argues that Defendant Miller is still liable because he was present during the encounter but failed to intervene. Plaintiff is correct that an officer who is present when excessive force is being used may still be liable on a bystander theory of liability even if the officer did not cause or participate in the use of force. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Plaintiff, however, raised this point for the first time in his response to Miller's motion for summary judgment. In his complaint, Plaintiff alleged that Miller punched and kicked Plaintiff, so the Court, in its merit review order, found that Plaintiff stated an excessive force claim against Miller. The Court, however, did not find that Plaintiff stated a failure-to-intervene claim. Plaintiff never moved this Court to amend his complaint to add such a claim but raised it for the first time in his response, which is too late. *See Aida Food & Liquor, Inc. v. City of Chicago*, 439 F.3d 397, 402 (7th Cir. 2006) ("[A] response to summary judgment is hardly a timely filing in which to raise an issue."); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th

Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). Therefore, any claim against Defendant Miller for a failure to intervene is not properly before the Court.

**B.     Deliberate Indifference Claim**

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To succeed on a claim of deliberate indifference to a serious medical need, a plaintiff must satisfy a test that contains both an objective and subjective component. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Under the objective component, a plaintiff must demonstrate that his medical condition is sufficiently serious. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under the subjective component, the prison official must have acted with a "sufficiently culpable state of mind." *Id.* In the medical care context, a "deliberate indifference" standard is used. *Estelle*, 429 U.S. at 104. A plaintiff may establish deliberate indifference by showing that a defendant "knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

   **1.     Defendant Miller**

Defendant Miller first argues that Plaintiff failed to meet the objective component of his deliberate indifference claim. "A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno*, 414 F.3d at 653. Although not "every ache and pain

or medically recognized condition involving some discomfort can support an Eighth Amendment claim," *Gutierrez*, 111 F.3d at 1371–72, a sufficient amount of pain may rise to the level of being a serious medical condition, even if the treatment consists solely of pain medication. *Cooper v. Casey*, 97 F.3d 914, 916–17 (7th Cir. 1996).

In *Cooper*, the plaintiffs testified that correctional officers "kicked and beat and maced the plaintiffs, inflicting cuts, severe muscular pain, and (as a consequence of the mace) a burning sensation in their eyes and skin." 97 F.3d at 916. The Seventh Circuit held that "whether the plaintiffs were in sufficient pain to entitle them to pain medication within the first 48 hours after the beating . . . was an issue for the jury." *Id.* at 917. The Seventh Circuit made clear that in some cases pain is the only symptom of a serious medical condition. *Id.*

In the present case, Plaintiff presents evidence that Defendants Pratt, Smith, Carlock, and Drysdale kicked Plaintiff approximately fifteen times and punched Plaintiff approximately twenty-five times in the face, ribs, and back. Defendant Smith pulled out two of Plaintiff's dreadlocks. Shackles were placed on Plaintiff extremely tightly, and Defendant Tangman stood on the shackles, which cut off Plaintiff's blood circulation and caused him pain. Plaintiff describes the pain he felt as an eight and nine on a ten-point scale. The Court finds that a reasonable juror could conclude that Plaintiff's pain was an objectively serious medical need, even if the treatment was only to provide Plaintiff pain medication.

Defendant Miller also argues that Plaintiff failed to meet the subjective component of his deliberate indifference claim. Miller argues that although Plaintiff claims "he exhibited physical injuries such as a bruised and swollen face, a swollen jaw, sores from where two of his dreadlocks were pulled out, and a contusion on his forehead, wrists, and ankles," Plaintiff does

not present evidence that his injuries "required emergency intervention." (Miller Mem. Law 13–14, ECF No. 62.)

Plaintiff, however, was not required to establish that he suffered from injuries that required emergency intervention, which Defendant Miller then consciously disregarded. Plaintiff was required only to establish that Miller "knew that [Plaintiff] needed pain medication," yet disregarded Plaintiff's request for medical attention. *Cooper*, 97 F.3d at 917; *see also Estelle*, 429 U.S. at 104–05 (stating that deliberate indifference may be manifested "by prison guards in intentionally denying or delaying access to medical care"). The Court finds that Miller's presence outside Plaintiff's cell door is sufficient evidence that he observed Plaintiff being punched and kicked and that he made the inference that Plaintiff suffered pain and needed pain medication. Analogous to the facts in *Cooper*, Miller was present during the encounter and "would therefore have had no basis for believing [Plaintiff to be] simply [a] noisy malingerer[]." 97 F.3d at 917.

Although a nurse saw Plaintiff less than two hours after the encounter, it was in response to Plaintiff tying a sheet around his neck like a noose. For whatever reason, the nurse apparently did not treat Plaintiff's injuries caused by the alleged use of force. It was not until the next day that a nurse gave Plaintiff pain medication. Defendant Miller argues that he cannot be held liable for such a short delay in Plaintiff being treated.

The Supreme Court has stated that a correctional officer may be held liable for intentionally denying or delaying access to medical care. *Estelle*, 429 U.S. at 104–05. Further, the Seventh Circuit has stated that "[w]hen guards use excessive force on prisoners, the requirements for proving deliberate indifference to the medical needs of the beaten prisoners ought to be relaxed somewhat." *Cooper*, 97 F.3d at 917. "Beating a person in violation of the

Constitution should impose on the assailant a duty of *prompt attention* to any medical need to which the beating might give rise . . . ." *Id.* (emphasis added).

Although Plaintiff does not present evidence that Defendant Miller used excessive force on him, *Cooper* is nonetheless relevant to Plaintiff's allegations against Miller. Plaintiff presents evidence that Miller acted with a culpable state of mind by failing to intervene in the other Defendants' use of excessive force. Thus, although Miller did not directly participate in the use of force, he was indirectly involved by failing to intervene and thus contributed to Plaintiff's pain. *See, e.g.*, *Watson v. Dodd*, No. 16-CV-1217-NJR, 2017 WL 120951, at *5 (S.D. Ill. Jan. 12, 2017) (allowing claim to proceed against defendant who "failed to intervene to prevent further injuries" to the plaintiff but did not secure appropriate care for the plaintiff after the fact). Accordingly, the duty to provide prompt medical attention to Plaintiff—a prisoner whom Defendants allegedly just attacked—also extends to Miller. Therefore, since Defendant Miller did not secure Plaintiff prompt medical attention, the Court finds that a reasonable juror could conclude that Miller acted with deliberate indifference to Plaintiff's pain.

Defendant Miller also argues that Plaintiff does not have "verifying medical evidence" that the delay in treatment caused Plaintiff any harm. *See Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007) (discussing requirement that a plaintiff offer verifying medical evidence in cases involving allegations of a delay in treatment).

Plaintiff's medical records, however, reveal that on June 27, 2016, a nurse noted that Plaintiff exhibited bruising and swelling around his eyes. The nurse gave Plaintiff pain medication and ordered x-rays. These medical records verify that Plaintiff suffered an injury that was treated with pain medication. The Court finds that this is verifying medical evidence that the delay in treatment caused Plaintiff harm by prolonging his pain. *See Williams*, 491 F.3d at 715

(stating that evidence of a plaintiff's diagnosis and treatment is sufficient verifying evidence if it "assist[s] the jury in determining whether a delay exacerbated the plaintiff's condition or otherwise harmed him"); *Gomez v. Randle*, 680 F.3d 859, 865–66 (7th Cir. 2012) (stating that "prolonged, unnecessary pain" is a cognizable harm).

Lastly, Defendant Miller argues he is entitled to qualified immunity. Miller argues that he could not know that delaying medical attention for an hour and a half or medical treatment for less than a day would violate Plaintiff's rights. Prison officials "are entitled to qualified immunity from liability arising out of conduct that 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Babcock v. White*, 102 F.3d 267, 276 (7th Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "While the right must be defined at the appropriate level of specificity, it is not to say 'that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . .'" *Delaney v. DeTella*, 256 F.3d 679, 686 (7th Cir. 2001) (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). "Rather, it is enough if, based on the pre-existing law, the unlawfulness of the conduct is apparent." *Id.*

*Estelle v. Gamble* clearly establishes that a correctional officer who intentionally denies or delays a prisoner's access to medical care may be held liable for deliberate indifference. 429 U.S. at 104–05. Further, *Cooper v. Casey* clearly establishes that a correctional officer who uses excessive force on a prisoner and causes the prisoner pain must provide prompt medical attention to the prisoner. 97 F.3d at 917. While Plaintiff did not offer sufficient evidence that Defendant Miller used excessive force on him, Miller was nonetheless present during the alleged use of excessive force and did not intervene. The Court finds that the unlawfulness of not providing prompt medical attention under such circumstances "is apparent" from *Cooper*. *See Delaney*, 256

F.3d at 686. Therefore, Defendant Miller is not entitled to qualified immunity on Plaintiff's claim that he acted with deliberate indifference.

### 2.    Defendant Tutoky

Defendant Tutoky argues that he is entitled to summary judgment because on June 27, 2016, he was not assigned to the unit where Plaintiff was housed and therefore "could not and would not have been walking on Plaintiff's gallery as Plaintiff asserts." (Tutoky Mem. Law 10, ECF No. 60.) Plaintiff, in his response, does not offer any evidence to dispute Defendant Tutoky's contention that he was not on Plaintiff's gallery on that date. In fact, Plaintiff does not even name Tutoky in his response and instead focuses his response solely on Defendants Meister, Devries, and Miller. Thus, it appears that Plaintiff concedes Tutoky's argument.

Regardless, to defeat summary judgment, Plaintiff must offer some evidence that a genuine dispute of material fact remains in light of Defendant Tutoky's affidavit that he was not present on Plaintiff's gallery on June 27, 2016. *See* Fed. R. Civ. P. 56(c)(1), (e)(2). Plaintiff has not presented such evidence. Therefore, the Court grants summary judgment to Defendant Tutoky for lack of personal involvement in the alleged acts of deliberate indifference.

### 3.    Defendants Meister and Devries

Defendants Meister and Devries first argue that Plaintiff failed to meet the objective component of his deliberate indifference claim. Plaintiff presents evidence that his condition on June 27, 2016, when he spoke with Meister and Devries, is similar to his condition on June 26, 2016. Plaintiff states that he had a gash on his forehead, a swollen jaw, and swollen eyes that were black and purple. He was also in pain and was later given pain medication to help alleviate that pain. Under Seventh Circuit precedent, a sufficient amount of pain may rise to the level of being a serious medical condition, even if the treatment consists solely of pain medication.

*Cooper*, 97 F.3d at 916–17. Accordingly, the Court finds that a reasonable juror could conclude that Plaintiff's pain was an objectively serious medical need, even if the treatment was only to provide Plaintiff pain medication.

Defendants Meister and Devries also argue that Plaintiff failed to meet the subjective component of his deliberate indifference claim. Meister and Devries argue that Plaintiff has failed to show that they acted with a sufficiently culpable state of mind and that, according to Plaintiff's own testimony, Meister and Devries told Plaintiff they would see what they could do.

To be deliberately indifferent, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference may be manifested "by prison guards in intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104–05. Merely showing that a prison official negligently or inadvertently failed to provide access to medical care, however, is not sufficient to establish deliberate indifference. *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002).

Plaintiff states that on June 27, 2016, he had a gash on his forehead, a swollen jaw, and swollen eyes that were black and purple. Plaintiff saw Defendant Meister at approximately 9:30 a.m. and Defendant Devries at approximately 10:00 a.m. Plaintiff states that he showed Meister and Devries his injuries, explained what had happened, and requested medical attention. According to Plaintiff, both Meister and Devries told Plaintiff they would see what they could do. Based on the evidence Plaintiff presents, Plaintiff did not suffer from injuries that required immediate medical attention. In addition, neither Meister nor Devries was present when the other Defendants allegedly attacked Plaintiff. Thus, Meister and Devries did not have a duty to secure prompt medical attention. Further, the responses from Meister and Devries that they would see

what they could do are insufficient evidence that they intentionally or recklessly delayed Plaintiff's access to medical care.

Plaintiff, however, argues that he told Defendants Meister and Devries that he kept passing out. Plaintiff cites to his deposition testimony to support his argument. In the portion cited to, however, Plaintiff does not state that he told Meister or Devries he kept passing out, which could be evidence of a medical condition that required immediate attention, but only that he showed Meister and Devries his injuries and told them he needed medical attention. Thus, without awareness of injuries that required immediate medical attention, Meister and Devries would have acted appropriately by finding Plaintiff medical care on a non-emergency basis. A nurse treated Plaintiff for his injuries shortly after 2:00 p.m. that day, which is a minor four-to-five hour delay from when Plaintiff made Meister and Devries aware of his injuries. This short delay in treatment for the types of injuries Plaintiff alleges does not constitute deliberate indifference. *See Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009) (noting that two-and-a-half-hour delay in treatment of plaintiff's shoulder injury "was minimal and had no adverse consequences"). As the Seventh Circuit has stated, "Anyone who has ever visited a doctor's office knows that some delays in treatment are inevitable, particularly absent a life-threatening emergency. Such delays are even more likely in the prison environment." *Berry v. Peterman*, 604 F.3d 435, 442 (7th Cir. 2010).

Plaintiff, however, points out that he was ultimately transported to the health care unit because correctional officers saw him passed out in his cell. Thus, he argues, this is evidence that Defendants Meister and Devries did not actually seek any medical attention for him. The Court, however, is not persuaded. The fact that correctional officers saw Plaintiff passed out in his cell, a condition that required immediate medical attention, is not sufficient evidence that Meister or

Devries never sought medical attention. Rather, it is evidence only that correctional officers found Plaintiff before Meister or Devries's request for medical care for Plaintiff were carried out. In the end, the Court is presented only with Plaintiff's speculation that Meister and Devries did not seek medical attention for him. Therefore, the Court finds that no reasonable juror could conclude that Defendant Meister or Devries acted with deliberate indifference to Plaintiff's injuries.

**IT IS THEREFORE ORDERED:**

1) Plaintiff's motion to request counsel [65] is DENIED with leave to renew.

2) The motion for summary judgment filed by Defendants Tutoky, Meister, and Devries [59] is GRANTED.

3) The motion for summary judgment filed by Defendant Miller [61] is GRANTED in part and DENIED in part. Summary judgment is granted to Miller on Plaintiff's excessive force claim but denied to Miller on Plaintiff's deliberate indifference claim.

4) The following claims remain for trial: (a) excessive force claim against Defendants Sorenson, Tangman, Pratt, Smith, Drysdale, and Carlock; and (b) deliberate indifference claim against Defendants just named, as well as against Defendant Miller.

5) The Clerk of Court is directed to terminate Defendants Tutoky, Meister, and Devries as parties to this case.

6) This case is referred to Magistrate Judge Hawley for a settlement conference. A final pretrial and jury trial will be scheduled if no settlement is reached.

Entered this 27th day of September 2018.

                                             s/ Sara Darrow
                                            SARA DARROW
                            UNITED STATES DISTRICT JUDGE